## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**MARTIN ALBERT GORDON**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**　　　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 3:08CV-P460-S**

**CHARLES JONES** *et al.*　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

### MEMORANDUM OPINION

This matter is before the Court for *sua sponte* screening of the *pro se* complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will dismiss Plaintiff's § 1983 claims against Defendants John Doe I, Greyhound Bus Company, Louisville Metro Police Chief Robert White, Louisville Metro Mayor Jerry Abramson, and all § 1983 claims against Defendants in their official capacities. The Court will allow Plaintiff's § 1983 claim against Defendant Police Officer Charles Jones and the John and Jane Doe defendants to proceed for further development. The Court will also allow state-law claims against Defendants White, Abramson, Jones, and the John and Jane Doe defendants to proceed, as well.

### I. SUMMARY OF CLAIMS

Plaintiff is a prisoner currently incarcerated at the Northpoint Training Center.[1] He files suit against Louisville Metro Police Officer Charles Jones, three other Louisville Metro police officers (John Doe II, John Doe III, and Jane Doe I), Greyhound Bus Company, Inc., an employee of Greyhound Bus Company, Inc. (John Doe I), Louisville Metro Police Chief Robert White, and Louisville Metro Mayor Jerry Abramson. He sues each Defendant in his or her individual and official capacities.

---

[1] Based on the allegations of the complaint, Plaintiff's incarceration is not related to the incidents alleged in the instant action.

The complaint arises out of events that took place on January 31, 2008 at the Greyhound bus terminal in Louisville. Plaintiff alleges that he was sitting in the bus terminal cafeteria attempting to sell items from his backpack when cafeteria worker John Doe I demanded that he leave the premises. When he did not leave, Plaintiff alleges that John Doe I physically assaulted him and caused him a loss of his property. He alleges John Doe I and the Greyhound Bus Company, Inc. violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

Plaintiff claims that Defendant Louisville Metro Police Officer Charles Jones then approached him, physically abused him while attempting to handcuff him, and subsequently tasered him. Plaintiff alleges Defendant Jones assaulted him, used excessive force, and caused a loss of his property in violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments.

Plaintiff's next claims that a second Louisville Metro police officer, John Doe II, then arrived on the scene and tackled him causing him injuries. He claims that a third police officer, John Doe III, and a female supervising officer, Jane Doe I, witnessed the alleged assault by John Doe II. He claims that John Doe II, John Doe III, and Jane Doe I violated his rights under the Eighth and Fourteenth Amendments.

Plaintiff claims that Defendant Jones issued him a citation, "maliciously charging plaintiff with fabricated charges" of disorderly conduct, criminal trespassing, and resisting arrest. Finally, he claims that Defendants Jones, John Doe I, John Doe II, John Doe III, and Jane Doe I violated his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. In addition, Plaintiff alleges that Greyhound Bus Company, Inc., Police Chief White, and Mayor Abramson were "negligent in not properly screening, training, and/or

supervision" of the aforementioned Defendants and violated the Fifth, Eighth, and Fourteenth Amendments.  Plaintiff seeks monetary and punitive damages as relief.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, or any portion thereof, if the Court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations omitted; alteration in *Twombly*).  In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations."  *McDonald v. Hall*,

610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983

**1.      Non-state actors**

To establish a right to relief under § 1983, a plaintiff initially must plead and prove two elements: (1) that he has been deprived of a right, privilege or immunity secured by the Constitution and laws of the United States; and (2) that the defendant(s) deprived him of that right while acting under the color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Defendants Greyhound Bus Company, Inc. and John Doe I are both private actors and are not parties acting under the color of state law. To set forth a cognizable § 1983 claim against these private defendants, the plaintiff must show that their actions were "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The Supreme Court has articulated three tests for determining whether a private individual's actions can be fairly attributable to the state. *Lugar,* 457 U.S. at 936-39. The three tests are: (1) the nexus test or symbiotic relationship test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26 (1961); (2) the public function test, *West v. Atkins*, 487 U.S. 42, 49-50 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978); and (3) the

4

state compulsion test, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970); *see also Wolotsky*, 960 F.2d 1331 (6th Cir. 1992) (for a discussion of the three tests).

"Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Id.* The court finds no such nexus in this case. Plaintiff has failed to allege any intimate association between the actions of Defendants John Doe I or Greyhound Bus Company, Inc. and the Commonwealth.

The public function test requires that the private actor exercise powers which are traditionally and exclusively reserved to the state, such as holding elections or eminent domain. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). It is clear that Plaintiff makes no showing in this case that Defendants John Doe I or Greyhound Bus Company, Inc. exercised such powers.

Finally, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335. More than mere acquiescence or approval by the state in the alleged wrongful actions is necessary. *Id.* Here, Plaintiff claims that Defendant John Doe I violated his constitutional rights in attempting to remove Plaintiff from the bus terminal and that Defendant Greyhound Bus Company, Inc. was liable to the extent it was negligent in supervising John Doe I. There is no allegation or suggestion that the state acquiesced or approved of either Defendant's purported wrongful conduct, much less coerced such action.

Accordingly, the Court concludes that Plaintiff's § 1983 claims against Defendants John Doe I and Greyhound Bus Company, Inc. fail because those defendants are not state actors, and these claims will be dismissed.

**2.      State actors**

   **a.      All official-capacity claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendants Jones, John Doe II, John Doe III, Jane Doe I, Chief White, and Mayor Abramson are, therefore, actually claims against Louisville Metro Government. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is

6

actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's complaint appears to be an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Louisville Metro Government, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it. Accordingly, the official-capacity claims against Defendants Jones, John Doe II, John Doe III, Jane Doe I, Chief White, and Mayor Abramson will be dismissed.

> **b.** **Individual-capacity claims**
>
> **I.** **Chief White and Mayor Abramson**

Plaintiff also seeks to hold Defendants White and Abramson liable based on their positions as Chief of Police and Mayor, respectively. The doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff fails to demonstrate any facts showing that Chief White or Mayor Abramson encouraged any specific incidents or implicitly authorized, approved, or knowingly acquiesced to any unconstitutional conduct. Accordingly, the individual-capacity claims under § 1983 against those Defendants must be dismissed.

### ii. Officer Jones

Plaintiff asserts that Defendant Officer Jones violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. Allegations premised upon mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).

Plaintiff fails to explain how the First Amendment applies to his claims. Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Upon review, Plaintiff fails to allege specific facts to support his First Amendment claim.

Plaintiff also fails to explain how the Fifth Amendment applies to his claims, and the facts as alleged by Plaintiff fail to state a cognizable Fifth Amendment claim. Specifically, the Court notes that, to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g., Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of municipal, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

Plaintiff's Eighth Amendment claim also fails because "[t]he Eighth Amendment, by its terms, applies only to post-conviction inmates." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citing *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005)). Since Plaintiff was not an inmate at the time of the incident alleged in the complaint, he fails to state a claim under the Eighth Amendment.

Plaintiff also alleges a claim under the Fourteenth Amendment. Although Plaintiff fails to identify the specific grounds for his Fourteenth Amendment claim, he alleges that Defendant Jones caused him a loss of personal property. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)). In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt,* 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, any due process challenge with respect to Plaintiff's lost property fails.

On review, the Court will allow Plaintiff's Fourth Amendment claim against Defendant Officer Jones in his individual capacity for illegal search and seizure, malicious prosecution, and

excessive force to proceed. In permitting this claim to proceed, the Court passes no judgment on the ultimate outcome of the claim.

### iii. John Doe II, John Doe III, and Jane Doe I

As noted previously, Plaintiff has sued John Doe II, John Doe III, and Jane Doe I Officers. The Court notes that Federal Rule of Civil Procedure 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Because Plaintiff is proceeding *in forma pauperis*, the Court will count the 120 days from the date of this Order. Accordingly, Plaintiff has 120 days from the date of this Order within which to move to amend his complaint to identify specific defendants or show good cause for his failure to do so. Plaintiff is put on notice that his failure to meet the requirements of the federal rules could result in dismissal of this action as to the John and Jane Doe police officer defendants.

### B. State-Law Claims

Plaintiff also claims Defendants Greyhound Bus Company, Inc., Louisville Metro Police Chief Robert White, and Louisville Metro Mayor Jerry Abramson were "negligent in not properly screening, training, and/or supervision as all malicious fabricated claims were dismissed on February 29, 2008." Negligence in hiring, supervision, or training is a recognized tort under Kentucky law. *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. App. 2000) (citing *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998); *Ashby v. City of Louisville,* 841 S.W.2d 184 (Ky. App. 1992)); *see also Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998). Therefore, upon review, the Court will permit Plaintiff's

state-law claims of negligent screening, training, and/or supervision against Greyhound Bus Company, Inc., Police Chief White, and Mayor Abramson to proceed.

In addition, Plaintiff asserts state-law claims of malicious prosecution, excessive force, and assault against Defendant Officer Jones, John Doe II, John Doe III, and Jane Doe I. Plaintiff also alleges state-law claims against these Defendants concerning his lost property. The Court will allow these claims to proceed against Defendant Jones and against the John and Jane Doe Defendants to the extent Plaintiff can identify them as directed in section A(2)(b)(iii). The Court passes no judgment on the ultimate outcome of these claims.

The Court will enter a separate Scheduling Order governing the development of the remaining claims and will enter a separate Order dismissing all other claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4411.010