UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV-P460-S

**MARTIN ALBERT GORDON**                                                            **PLAINTIFF**

**v.**

**CHARLES JONES** *et al.*                                                               **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Martin Albert Gordon filed a *pro se* complaint under 42 U.S.C. § 1983 proceeding *in forma pauperis*. This matter is before the Court on the motion for summary judgment by Defendants Charles Jones, Chief Robert White, and former Mayor Jerry Abramson (DN 84). The motion is ripe for review. For the following reasons, the Court will deny the motion for summary judgment on Plaintiff's claims against Defendant Jones for unlawful search and seizure and excessive force under § 1983 and state-law claims of excessive force and assault and battery. The Court will grant the motion for summary judgment with respect to Plaintiff's malicious prosecution and lost property claims against Defendant Jones and negligent hiring, training, and supervision claims against Defendants Abramson and White.

**I.**

The complaint arises out of an incident on January 31, 2008, at the Greyhound Bus Terminal in Louisville. According to the verified complaint (DN 1), Plaintiff was attempting to sell items out of a book bag in the bus terminal cafeteria. While Plaintiff was waiting for a cafeteria employee to purchase items, a second Greyhound cafeteria worker[1] yelled at him to get

---

[1] The Court dismissed Plaintiff's claims against the Greyhound cafeteria worker, whom Plaintiff identified in the complaint as John Doe I, upon initial review of the complaint under 28 U.S.C. § 1915A. The Court also dismissed Plaintiff's claims against Greyhound Bus Company, Inc. and its manager Tim Gardner by prior Order.

out. Plaintiff agreed to leave as soon as the first employee purchased the items. The Greyhound employee then "snatched" Plaintiff's book bag and struck and pushed Plaintiff toward the waiting room of the bus station.

As Plaintiff was being hit and pushed toward the waiting room, he states that the following occurred:

> [D]efendant Charles Jones came and grabbed Plaintiff's left-arm putting a handcuff on it then he grabbed plaintiff by the neck of his clothing, causing plaintiff to drop his bookbag, and forced plaintiff into the waiting-room. Plaintiff tried to ask for his bookbag and pointed his right-arm at his bookbag laying on the floor, but defendant Jones said: 'F*** your bag, you're going to jail!' Plaintiff again asked for his bookbag because it had his identification papers, Bus tickets, and property, pointing towards the cafeteria; this is when defendant Jones stopped and tried to grab plaintiff's right-arm. When he couldn't, defendant Jones grabbed plaintiff's left-arm with both hands and swung plaintiff around causing plaintiff to bang his face into one of the machines in the waiting-room, cutting plaintiff's face above his right-eye. As plaintiff put his right-hand to his face to stop the blood shooting out from his face, defendant Jones slammed plaintiff to the floor and dropped his knees and body into plaintiff's back! When defendant Jones grabbed Plaintiff's right-arm and brought it back to place it in the handcuff, he saw all the blood on plaintiff's hand from his face and on the floor and let plaintiff's right-arm go; then defendant Jones unlocked the handcuff on plaintiff's left-arm and removed his knees and body off of plaintiff's body and told plaintiff to: 'get the h*** out of here!'

Plaintiff then ran stumbling to his book bag, grabbed it, and proceeded to the doors to leave. After going through the first set of doors, Plaintiff discovered that the second set of doors was locked. Plaintiff unlocked one door, and as he opened it, Defendant Jones shot Plaintiff in his back with his taser gun. Plaintiff was almost knocked down to the sidewalk but ran into the street having lost his book bag when he was shot with the taser gun. The taser's projectiles did

2

not penetrate Plaintiff's jacket.  Plaintiff suffered a laceration to his right eye and contusions to his face, knees, and back as a result of being struck and tasered by Defendant Jones.

Plaintiff then stumbled into the street and was tackled by a Louisville Metro police officer[2] causing Plaintiff's shoulder and head to hit the curb.  The officer pushed Plaintiff's face down into the street, handcuffed him, and dragged him up on the curb causing further injury.  He claims that two other officers passively witnessed the actions of the responding officer.

An ambulance took Plaintiff to University of Louisville Hospital where he was treated for injuries.  He first refused to give his name to police because he believed he had done nothing wrong.  Plaintiff was then told that if he gave his name and information he would be given a citation and released.  Plaintiff then provided his information.  Defendant Jones then issued a citation "maliciously charging Plaintiff with fabricated charges of 'Disorderly Conduct,' 'criminal trespassing,' an Resisting Arrest.'"  Plaintiff states that the actions of Defendant Jones violated his constitutional rights and claims that Defendants White and Abramson were "negligent in not properly screening, training, and/or supervision as all malicious fabricated charges were dismissed on February 29, 2008 in District Court!"

After conducting an initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Fourth Amendment claims for illegal search and seizure, malicious prosecution, and excessive force and state-law claims for malicious prosecution, excessive force, assault, and lost property to proceed against Defendant Jones.  The Court also allowed Plaintiff's

---

[2]The Court dismissed Plaintiff's claims against the three responding Louisville Metro Polic officers, named in the complaint as John and Jane Does, by prior Order.

claims of negligent hiring, supervision, and training to proceed against Defendants White and Abramson.

In their motion for summary judgment, Defendants have a different version of the physical altercation between Plaintiff and Defendant Jones. Defendants state that Plaintiff admits that he was yelling and screaming inside the bus station. Defendants state that while Defendant Jones was attempting to handcuff Plaintiff, Jones told Plaintiff that he was going to jail. They state, "Gordon resisted Officer Jones when he told him he was under arrest, and after hitting his head on the vending machine while trying to get free, he ran out of the bus station to get away from Officer Jones." Defendants state that as Plaintiff fled the bus station Defendant Jones followed. Defendants state, "Jones attempted to shoot Plaintiff with his taser gun while he was running from the station, but the projectiles did not penetrate Plaintiff's jacket." To support these factual contentions, Defendants cite requests for admissions they propounded on Plaintiff to which Plaintiff did not timely respond.

## II.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of proof has presented a

4

jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morrison v. Bd. of Trs.*, 583 F.3d 394, 399-400 (6th Cir. 2009).

## III.

A.  **Unlawful search and seizure and excessive force**

   1.  **42 U.S.C. § 1983**

Section 1983 provides a federal cause of action for the deprivation of "any rights, privileges or immunities secured by the Constitution and law." 42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, Plaintiff asserts that Defendant Jones violated his rights under the Fourth Amendment by subjecting him to an illegal search and seizure and in using excessive force in trying to eject him from the Greyhound Bus terminal. Specifically, Plaintiff states that Defendant Jones swung Plaintiff into a vending machine causing Plaintiff injury, that he slammed Plaintiff into the floor and dropped his knees into his back, and that he shot Plaintiff with a taser gun.

The Fourth Amendment states in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "It is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). The Fourth Amendment governs where, as here, the alleged force occurs in the course of an arrest or other seizure of the plaintiff. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Unlike excessive-force claims under the Eighth or Fourteenth Amendments, which employ tougher tests and require a Plaintiff to show more force to state a claim,[3] the Fourth Amendment merely asks whether an officer's actions were reasonable. *Graham*, 490 U.S. at 395. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. To determine whether force is reasonable under the Fourth Amendment, the court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

---

[3]The Eighth Amendment asks "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Phelps*, 286 F.3d at 300 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotations omitted)). Where neither the Eighth Amendment nor the Fourth Amendment apply, "the more generally applicable due process clause of the Fourteenth Amendment still provides some protection." *Phelps*, 286 F.3d at 300. The due process clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* (quoting *Graham*, 490 U.S. at 395 n.10)

In *Graham*, the Supreme Court explained that application of this test "requires careful attention to the facts and circumstances of each particular case, including the [1] severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id*. at 396-97. A court is not to substitute its own notion of the "proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000).

As to the first factor identified in *Graham*, the severity of the crime, Plaintiff was charged with a citation for disorderly conduct, criminal trespass, and resisting arrest. Disorderly conduct and resisting arrest are misdemeanors, KRS §§ 525.060(2); 520.090(2), and criminal trespass is a violation. § 511.080(2) . *See also McCline v. Roose*, Case No. 1:07cv-0545, 2009 U.S. Dist. LEXIS 17353, at *23 (N.D. Ohio Mar. 6, 2009) (recognizing that disorderly conduct and resisting arrest are "not particularly severe"). It is undisputed that Plaintiff was issued a citation following the incident and not taken into custody. Accordingly, the crimes allegedly committed by Plaintiff are not particularly severe.

As to the second factor, the potential threat to officers or others, the Court notes that it must view the facts in a light most favorable to Plaintiff as the non-moving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88. Plaintiff states that he was assaulted by and tasered by Defendant Jones and that he did not resist arrest. While Defendants contend Plaintiff

7

was yelling and screaming and resisting arrest, Defendants do not allege that Plaintiff made any threats against Defendant Jones or others, that Plaintiff possessed a weapon, or that Plaintiff sought to harm Jones or others.

As to the third factor, whether Plaintiff resisted arrest or attempted to evade arrest, Defendants state that Plaintiff admitted that he was resisting Defendant Jones after he was told he was under arrest, admitted that he hit his head on the vending machine while trying to get away from Defendant Jones, and admitted that he fled from the bus station to try to get away from Defendant Jones. If these were indeed undisputed facts, they would weigh heavily in favor of summary judgment. However, Defendants argue that these admissions resulted from Plaintiff's failure to timely respond to their requests for admissions.

Federal Rule of Civil Procedure 36(a)(3) provides that a matter is deemed admitted "unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Rule 36(a)(3) further states, "A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." Requests for admission which are deemed admitted by the default of a *pro se* litigant generally should not provide the sole basis for granting summary judgment, unless the *pro se* litigant was advised of the consequence of failing to reply to the requests for admission. *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988). "[P]ro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served." *Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998). *See also United States v. One Sony Wega 42" Plasma TV*, 2008 U.S. Dist. LEXIS 20192, *7-8 n. 1 (W.D. Tenn. 2008) (entering summary

judgment against *pro se* party based on failure to respond to requests for admissions where requests contained "warning, in bold, on front page of its requests, that the matters would be deemed admitted if the Claimant failed to respond."). Moreover, as Fed. R. Civ. P. 36(a) provides that the Court may shorten or lengthen the time a party is allowed to respond, the Court may, in its discretion, permit the filing of an answer that would otherwise be untimely. *United States v. Turk*, 139 F.R.D. 615, 618 (D. Md. 1991) (citing *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983)). "It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a [*pro se*] party because a deadline is missed." *Id.* (citing *Hadra v. Herman Blum Consulting Engineers*, 74 F.R.D. 113, 114 (N.D. Tex. 1977)).

In this case, Defendants stated in correspondence to Plaintiff *after* the thirty-day time for responding had expired that the outstanding requests for admissions were already deemed admitted. However, the requests for admissions themselves contained no warning that failure to respond within thirty days would result in the matters being deemed admitted. Moreover, Plaintiff did ultimately respond to the requests for admissions (DN 55, Att. 1), albeit untimely. In Plaintiff's responses to the requests for admissions, Plaintiff denies that he resisted arrest, denies that he was yelling and screaming, denies that he hit his head on a vending machine as he tried to get away from Defendant Jones, and denies that he ran out of the bus station trying to get away from Defendant Jones. For these reasons, the Court finds that the requests for admissions are not deemed admitted by Plaintiff. Therefore, these are facts in dispute.

Examining the particular facts and circumstances of this case, the Court finds that summary judgment cannot be granted on Plaintiff's claim of excessive force and unlawful search and seizure under the Fourth Amendment.

### 2. Qualified immunity

Defendants assert that Jones is entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harris v. Circleville*, 583 F.3d 356, 364-65 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008)). A defendant is entitled to qualified immunity unless the evidence, viewed in the light most favorable to the plaintiff, "would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). The burden is on the plaintiff to demonstrate that the officer is not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010).

Sixth Circuit case law "clearly establish[es] the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687-88 (6th Cir. 2006). In moving for summary judgment based on qualified immunity, a defendant must concede the most favorable view of the facts to the plaintiff for purposes of the motion. *See Phillips*, 534 F.3d at 534 (citing *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). Where an arrestee is neither resisting nor attempting to

escape the use of any force may be unreasonable. *See, e.g., Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010) (denying qualified immunity to officer where plaintiff alleged that he was not resisting arrest when officer slammed him into car); *Morrison*, 583 F.3d at 408 (denying qualified immunity because under the plaintiff's version of events a reasonable juror could conclude that the officer pushed the plaintiff's face into the ground in absence of a real concern for his safety); *Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006) (denying qualified immunity to an officer who slapped a suspect in the face because he was being unruly); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity because even though plaintiff had attempted to flee and was not restrained, he was attempting to surrender when he was struck on the head).

Construing the facts in the light most favorable to Plaintiff, as the Court is required to do, Plaintiff was not resisting arrest or attempting to escape when Defendant Jones allegedly swung him into a vending machine, slammed him into the floor dropping his knees into Plaintiff's back, and tasered him. Because of the law in this Circuit and the facts of this case, the Court concludes that Defendant Jones is not entitled to qualified immunity.

**3.      State law**

Defendants also argue that they are entitled to summary judgment on Plaintiff's state-law claim of excessive force. "Under Kentucky statutory law, a peace officer is not allowed to use unnecessary force or violence in making an arrest." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (citing KRS § 431.025(3).) "But, he is entitled to use such force as is necessary, or reasonably appears so, to take a suspect into custody." *Id.* (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)). Defendants argue that, "by Plaintiff's own

11

admissions, the force used by Defendant Jones was not sufficient to detain and/or restrain Gordon." However, Defendants rely on admissions Plaintiff made by virtue of his failure to timely respond to their requests for admissions. Such failure cannot be the sole basis for granting summary judgment if where, as here, Plaintiff was not warned in the requests for admissions of the consequence of failing to timely respond. *See Harris v. Callwood*, 844 F.2d at 1256; *Diggs*, 181 F.R.D. at 469. Therefore, Defendants' motion for summary judgment on Plaintiff's state-law claim of excessive force will also be denied.

**B.     Assault and battery**

Kentucky law sets forth that recovery against a law enforcement official for assault and battery[4] during the course of an arrest is appropriate where either (1) there was no probable cause for the arrest or (2) there was probable cause for the arrest but the officer used excessive force in effectuating the arrest. *See City of Lexington v. Gray*, 499 S.W.2d at 74-75; *Lexington-Fayette County Gov't v. Middleton*, 555 S.W.2d 613, 618-19 (Ky. Ct. App. 1977). "[T]he officer making an arrest may use such force as may be necessary to make the arrest but no more." *City of Lexington v. Gray*, 499 S.W.2d at 74.

As discussed above, for their argument that Defendant Jones had probable cause to make an arrest, Defendants rely on admissions Plaintiff made by virtue of his failure to timely respond to their requests for admissions. However, such failure cannot be the sole basis for granting summary judgment if Plaintiff was not warned in the requests for admissions of the consequence of failing to respond timely. *Harris v. Callwood*, 844 F.2d at 1256; *Diggs*, 181 F.R.D. at 469.

---

[4]Defendants do not move for summary judgment on the assault and battery claim specifically but move for summary judgment on Plaintiff's state-law claims. The Court addresses Plaintiff's assault and battery claim for purposes of clarity.

Plaintiff's complaint raises a genuine issue of material fact as to whether Officer Jones used "more force than was reasonably necessary" during his arrest. *City of Lexington v. Gray*, 499 S.W.2d at 74. Defendants contend that they are entitled to official immunity on all of Plaintiff's state-law claims for the same reasons that they are entitled to qualified immunity on Plaintiff's federal claims. For the reasons stated above, Defendants are not entitled to qualified immunity. Therefore, the motion for summary judgment with regard to Plaintiff's state-law claims will be denied.

**C.     Malicious prosecution**

**1.     State law**

Kentucky law requires proof of six basic elements to show malicious prosecution. *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). They are (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the original plaintiff/complainant, (3) the termination of such proceedings in the original defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. *Id.* Because "the tort of malicious prosecution is one that has not been favored in the law," *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989), "one claiming malicious prosecution must strictly comply with the elements of the tort." *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 602 (Ky. Ct. App. 2006).

The third element requires a plaintiff claiming malicious prosecution to prove more than just the termination of the prior proceedings, rather, it must be demonstrated that the termination was "related to the merits of the case and is reflective of the innocence or lack of criminal

responsibility of defendant." *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988). Accordingly, the "dismissal of a suit for technical or procedural reasons that do[es] not reflect on the merits of the case is not a favorable termination of the action." *Davidson*, 202 S.W.3d at 605 (quoting *Alcorn*, 762 S.W.2d at 812).

Defendants assert that the charges against Plaintiff for disorderly conduct, criminal trespass, and resisting arrest were not dismissed on the merits. Defendants offer the affidavit of Assistant County Attorney Joe Martz who states that the charges were dismissed without prejudice "because Plaintiff was then serving an extended sentence on other misdemeanor charges and had additional cases in Circuit Court where it was highly likely he would be receiving substantial prison time." The affidavit further states that "[a]ny sentence imposed on the misdemeanor charges [at issue] would merely run concurrent with time Mr. Gordon was already serving, thereby imposing no additional punishment on Mr. Gordon." Plaintiff presents no evidence to rebut Defendants' evidence.

Based on this account of the reasons behind the dismissal of charges against Plaintiff, the Court concludes that the charges were dropped for procedural or technical reasons and the dismissal does not reflect that Plaintiff prevailed on the merits of the case, namely that Plaintiff was innocent of the charges. Consequently, Plaintiff is unable to satisfy the third element of his claim for malicious prosecution, and his state-law claim of malicious prosecution is dismissed as a matter of law. *See Kennedy v. City of Villa Hills*, No. 07-122-DLB, 2009 U.S. Dist. LEXIS 87710, at *27 (E.D. Ky. Sept. 23, 2009) (granting summary judgment on plaintiff's malicious prosecution claim because defendants submitted evidence that plaintiff did not prevail on the

merits in the criminal matter); *Rudd v. Bailey*, No. 08-44-ART, 2009 U.S. Dist. LEXIS 21499, at *2 (E.D. Ky. Mar. 17, 2009) (same).

### 2. 42 U.S.C. § 1983

Plaintiff also brought a malicious prosecution claim against Defendant Jones under § 1983. Even after the Sixth Circuit recognized a § 1983 claim for malicious prosecution arising under the Fourth Amendment, the contours of such a claim remained uncertain. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). However, the Sixth Circuit recently set forth the elements of malicious prosecution under § 1983. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). To succeed on a malicious prosecution claim under § 1983 premised on a Fourth Amendment violation, a plaintiff must prove the following:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id.* (citations and internal quotation marks omitted).

Therefore, as is required for a state-law claim of malicious prosecution, Plaintiff must prove that the underlying criminal proceeding terminated in his favor. As discussed above, Plaintiff cannot prove that element in this case. Moreover, Plaintiff has not shown that he suffered a deprivation of liberty apart from the initial seizure. After the incident at the bus terminal, he was taken to University Hospital where he was issued a citation and released. Based

on the affidavit of Assistant County Attorney Martz, the charges were dismissed. Plaintiff was later incarcerated but not in connection with the citation by Defendant Jones. Therefore, Plaintiff's malicious prosecution claim under § 1983 also fails as a matter of law, and summary judgment will be granted as to that claim.

D.      **Lost property**

Defendants also move for summary judgment on Plaintiff's claim for loss of his personal property against Defendant Jones. As for his claim against Defendant Jones, Plaintiff states in the verified complaint: "For plaintiff suffering lasceration to his right-eye, contusions to face, knees, back, and lost of property from the assault by defendant Jones and being shot in the back with defendant Jones' Taser for no reason, defendant Charles Jones and his employers are guilty of violating Plaintiff's I, IV, VIII, and XIV Constitutional Civil Rights." Based on the allegations in the complaint, Plaintiff's claim against Defendant Jones for lost property is not a state-law claim but one for deprivation of property under the Fourteenth Amendment.

The Supreme Court has held that the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment where adequate remedies are provided by state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)). In order to assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt,* 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due

16

process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, Plaintiff's claim concerning his lost property will be dismissed.

E.  **Negligent hiring, supervision, and training**

Finally, Defendants move for summary judgment on Plaintiff's claims against Defendants Abramson and White for negligent hiring, supervision, and training. Negligence in hiring, supervision, or training is a recognized tort under Kentucky law. *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. Ct. App. 2000) (citing *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. Ct. App. 1998) and *Ashby v. City of Louisville,* 841 S.W.2d 184 (Ky. Ct. App. 1992)); *see also Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). "[A]n employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley*, 964 S.W.2d at 442 (citing *Waldon v. Housing Authority of Paducah*, 854 S.W.2d 777, 779 (Ky. Ct. App. 1993)). Similarly, an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created. *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (citing Restatement (Second) of Agency § 213 (1958) (Comment & Illustrations)).

Assuming for purposes of this analysis that Officer Jones did engage in the conduct alleged by Plaintiff, Plaintiff offers no evidence that Defendant Abramson or White knew or should have known of any risk posed by Defendant Jones. Nor is there any evidence of deficient training. Plaintiff has failed to create a genuine issue of material fact that there was a foreseeable

17

risk of harm to Plaintiff. Accordingly, Defendants Abramson and White are entitled to summary judgment, and Plaintiff's claims against them will be dismissed as a matter of law.

## IV. ORDER

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment by Defendants Jones, Abramson, and White (DN 84) is **GRANTED in part and DENIED in part.** The motion for summary judgment is **GRANTED** with respect to Plaintiff's malicious prosecution claims under state law and § 1983 against Defendant Jones, his lost property claim against Defendant Jones, and his claims for negligent hiring, training, and supervision against Defendants Abramson and White. The motion for summary judgment is **DENIED** with respect to Plaintiff's § 1983 claims for excessive force and unlawful search and seizure and state-law claims for excessive force and assault and battery. The Clerk of Court is directed to **terminate** Defendants Abramson and White as parties to the action since no claims remain against them.

Date:

cc: Plaintiff, *pro se*
　　　Counsel of record
4411.010

18